## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| James D. Paulsen, individually; Kathleen M. Paulsen, individually; and James D. Paulsen and Kathleen M. Paulsen, as Trustees and Beneficiaries of the Paulsen Family Trust Dated January 19, 2019, | Case No. 3:22-cv-50111 Honorable Iain D. Johnston |
| Appellants, | |
| v. | |
| Joseph D. Olsen, Trustee for the Estate of James D. Paulsen, | |
| Appellee. | |

## MEMORANDUM OPINION AND ORDER

Bankruptcy allows debtors to "reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). After opting for a "fresh start," *id.*, and declaring bankruptcy, a trustee is appointed by the bankruptcy court and is entrusted with the "broad responsibilities" of "collecting the debtor's assets and dealing with the bankruptcy estate." *Koch Refin. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987). The trustee has the "general duties of marshalling all available property, reducing it to money, distributing it to creditors, and closing up the estate." *Id.*

1

Debtor James Paulsen filed for bankruptcy on October 29, 2019, seeking to take advantage of the "fresh start" that the law provides. In his bankruptcy schedules, Mr. Paulsen described his ownership interest in his residential property as "Tenancy by the Entirety Held in Land Trust" and claimed his interest was exempt under Illinois law from being used to satisfy a judgment. Under Illinois law, such interests cannot be sold to satisfy a judgment entered against one of the tenants. 735 ILCS 5/12-112. However, "if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due," the protection does not apply. *Id.* As trustee, Mr. Olsen cried foul and alleged that the Paulsens did just that.

Mr. Olsen sought to (1) avoid the transfer of the Paulsens' interests from joint tenants to tenants by the entirety, (2) recover the prior joint tenant interests, and (3) sell the property under section 363(h) of the Bankruptcy Code. After a trial on the merits, the Bankruptcy Court sided with Mr. Olsen as to his first two goals and sided with the Paulsens in part as to the third. The Paulsens now appeal and cast a wide net of perceived errors. Because the Paulsens failed to show that the Bankruptcy Court erred as a matter of fact or law, the Bankruptcy Court's order is affirmed as to the first two goals. The appeal is dismissed as to the third goal for lack of jurisdiction.

## STATEMENT OF THE CASE

This statement is distilled from the Bankruptcy Court's findings of fact, which are amply supported by the evidence in the record.

Debtor James Paulsen and his wife, Kathleen Paulsen, owned their home in Ringwood, Illinois since 1974. Dkt. 9 at 46:17–19. They originally owned their home as joint tenants. *Id.* at 47:6–10.[1]

Mr. Paulsen worked as a paving contractor doing business as "Paulsen Paving Company." Dkt. 4-3 at 561 ¶ 11. Mr. Paulsen's son, Daniel Paulsen, began assisting with business operations and served as a "business partner." *Id.* at 561 ¶ 12.

On January 24, 2014, Mr. Paulsen and his son took out a $345,000 loan from McHenry Savings Bank. *Id.* at 561–62 ¶ 13. In exchange, they pledged as collateral their ownership interest in commercial real estate located in Woodstock, Illinois; business equipment; and other assets related to the company. *Id.* at 561–62 ¶¶ 13, 16. The note, evidencing the loan, required Mr. Paulsen and his son to make monthly payments of $2,547.41. *Id.* at 562 ¶ 17.

Business steadily declined, and they closed their namesake business around 2016 or 2017. *Id.* at 562 ¶ 18. At that time, the business "was generating no income whatsoever." Dkt. 9 at 65:20–22.

Mr. Paulsen and his son then fell behind on payments on the debt. *Id.* at 67:6–17. McHenry Savings Bank received its last payment on July 20, 2018. Dkt. 4-4 at 11. According to a payoff letter dated January 9, 2019, Mr. Paulsen and his son owed $361,521.69—more than the loan amount. *See* Dkt. 4-3 at 566 ¶¶ 45–46. Mr. Paulsen testified that he had difficulty making the monthly payments because his "only source

---

[1] Joint tenancy is a "present estate in all the joint tenants, each being seized of the whole." *Harms v. Sprague*, 473 N.E.2d 930, 934 (Ill. 1984) (internal quotations and citation omitted). "An inherent feature of the estate of joint tenancy is the right of survivorship, which is the right of the last survivor to take the whole estate." *Id.*

of business income was the sale of equipment." Dkt. 9 at 69:25–70:3. This financial
hardship led Mr. Paulsen to fall behind on the property taxes owed on the commercial
real estate. *See id.* at 70:10–12. Mr. Paulsen's 2016 taxes, payable in 2017, were not
filed on time, and he ultimately had to redeem those taxes for over $10,000. *See id.*
at 67:3–8; Dkt. 4-3 at 574 ¶ 84(b). He did so by selling the equipment, which was also
part of the collateral for the McHenry Savings Bank's loan. *See* Dkt. 9 at 66:20–67:17;
Dkt. 4-3 at 562 ¶ 16.

On October 15, 2018, McHenry Savings Bank sued Mr. Paulsen and his son,
alleging that they had breached the terms of their loan by failing to pay their 2016
and 2017 real estate taxes owed on the collateral commercial real estate. Dkt. 4-3 at
564 ¶¶ 33–34. McHenry Savings bank obtained a judgment against Mr. Paulsen and
his son on October 8, 2019, in the amount of $348,531.15. *Id.* at 568 ¶ 55.

Mr. Paulsen and his son were referred by their attorney to James Magee,
another attorney who would ultimately represent them in the bankruptcy case, and
on January 7, 2019, Mr. Paulsen and his son met with him. Dkt. 4-4 at 83. Mr. Magee
is an attorney who "held himself out as possessing expertise in the areas of, inter alia,
bankruptcy and asset protection." Dkt. 4-3 at 567 ¶¶ 53, 57. Shortly after the
meeting, Mr. Magee emailed the referring attorney, explaining that he "would be able
to do the conveyance into a land trust and trust agreement establishing a tenancy by
the entirety." *See* Dkt. 9 at 110:18–20.

Mr. Paulsen and his wife executed a Deed in Trust and Trust Agreement
prepared by Mr. Magee on January 19, 2019. Dkt. 4-3 at 568 ¶¶ 56, 58. The trust

instrument transferred Mr. and Mrs. Paulsen's interests in their Ringwood property from joint tenants with rights of survivorship to the trust, with Mr. and Mrs. Paulsen holding beneficial interests as tenants by the entirety. *Id.* at 568 ¶ 58.[2] The deed in trust was recorded on January 25, 2019, and three days later, Mr. Magee entered his appearance on Mr. Paulsen and his son's behalf in the McHenry Savings Bank litigation. Dkt. 4-3 at 568 ¶ 54, 574 ¶ 86.

At the time Mr. and Mrs. Paulsen transferred their interests in their residential property into the trust, Mr. Paulsen owed McHenry Savings Bank more than principal amount of the loan. *See id.* at 566 ¶¶ 45–46. The debt had been accelerated. *See id.*

A personal financial statement tendered to McHenry Savings Bank, dated January 24, 2019, explained that Mr. Paulsen owned three life insurance policies with Mrs. Paulsen as the beneficiary, jointly owned with his wife $8,500 in "cash on hand and in Banks." *Id.* at 569 ¶ 64; Dkt. 4-4 at 64, 66. It also included the commercial property with an original value of $345,000 but no current market value, and the Ringwood property, with a current market value of $275,000, which he denoted as "50% of the tendancy of the entirety [sic]." Dkt. 4-4 at 65. The only liabilities included were his debt to McHenry Savings Bank in the amount of $339,505 and two credit cards balances totaling $2,920. *Id.* at 65–66.

---

[2] Tenancy by the entirety is a form of ownership of a homestead property only available to married couples. *In re Estate of Moshe*, 190 N.E.3d 886, 895 (Ill. App. Ct. 2021). "This type of ownership operates under the fictional assumption that a husband and wife are one for legal purposes-it conveys the property to them as one person; they each own 100% of the property." *Id.*

A month later, in February 2019, the Paulsens and Barry Lederer, one of Mr. Paulsen's friends and former employees, entered into a contingent sales agreement of the commercial property for $275,000. Dkt. 4-3 at 570 ¶¶ 70–71, 574 ¶ 84(a). The sale was contingent on Mr. Lederer securing $220,000 in financing and Mr. Lederer's approval of the condition of the real estate, based upon an inspection/environmental site assessment. *Id.* at 570 ¶ 71; Dkt. 9 at 154:11–17. That June, Mr. Lederer deposited $53,000 in Mr. Paulsen's daughter-in-law Michelle Paulsen's bank account to be held in escrow. *See* Dkt. 9 at 194:10–25. Mr. Lederer never secured the funding for the sale. *See* Dkt. 4-3 at 571 ¶ 75. According to Mr. Lederer's attorney, there was "no way" the bank would make a loan on the commercial property at the "current purchasing price." *Id.* What's more, Mr. Lederer did not receive the desired environmental inspection report. *Id.* Thus, Mr. Lederer's attorney contacted Mr. Paulsen and declared the contract "null and void." *Id.* The $53,000 deposit was then transferred back to Mr. Lederer in August 2019. *See* Dkt. 9 at 194:23–25.

Mr. Paulsen filed for bankruptcy on October 29, 2019. Dkt. 4-3 at 572 ¶ 78. In his bankruptcy schedules, Mr. Paulsen describes his interest in his homestead Ringwood property as "Tenancy by the Entirety Held in Land Trust" and claims a 100% exemption under 735 ILCS 5/12-112. Dkt. 4-2 at 347, 354. Mr. Paulsen listed that he is retired and that his only income is from Social Security. *Id.* at 361–62. Mr. Paulsen and Mrs. Paulsen's combined monthly income is $5,374, and their monthly expenses are $5,194, excluding the McHenry Savings Bank debt. *Id.* at 362–64. Their

monthly disposable income is $180. *Id.* at 364 Mr. Paulsen's prior income for 2018 was $22,500 and for 2017 was $19,200. *Id.* at 367.

## PROCEDURAL POSTURE

On May 22, 2020, the trustee for the bankruptcy proceeding, Joseph Olsen, sued Mr. and Mrs. Paulsen. *See* Dkt. 4-2 at 25. In Count I, Mr. Olsen sought to leverage the Bankruptcy Code's strong-arm provision, 11 U.S.C. § 544(b), to avoid the transfer of the Paulsens' interests in their Ringwood property from joint tenants to tenants by the entirety and preserve the interest for the benefit of the estate. Dkt. 4-2 at 21–23. Under § 544(b), a trustee can avoid a transaction "of the debtor that would be voidable by any actual unsecured creditor under state law." 11 U.S.C. § 544(b); *In re Image Worldwide, Ltd.*, 139 F.3d 574, 576–77 (7th Cir. 1998).

Mr. Olsen pointed to 735 ILCS 5/12-112 and alleged that the transfer should be avoided under Illinois law because, as per the statute, Mr. Paulsen transferred the property "into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due." 735 ILCS 5/12-112; Dkt. 4-2 at 21–22.

Count II sought to recover for the bankruptcy estate the transferred interests or the value of such property. Dkt. 4-2 at 23–24.

Lastly, Count III sought the Bankruptcy Court's permission to sell the Ringwood property "free and clear" of the Paulsens' interests under 11 U.S.C. § 363(h). *Id.* at 24–25.

7

Unsurprisingly, the Paulsens vociferously disagreed with Mr. Olsen's allegations. Mr. and Mrs. Paulsen moved to dismiss the complaint, which the Bankruptcy Court denied. *Id.* at 66–95, 134. Mr. and Mrs. Paulsen moved for summary judgment, which the Bankruptcy Court also denied. *Id.* at 137–39; Dkt. 4-4 at 171–76.

The Bankruptcy Court held a three-day trial. *See In re Paulsen*, 640 B.R. 147, 151 (Bankr. N.D. Ill. 2022). The Bankruptcy Court received over three dozen exhibits and heard the testimony of James Paulsen, Kathleen Paulsen, Daniel Paulsen, James Magee, and Joseph Olsen. *Id.*

The Bankruptcy Court found that the "testimony of the Defendants as to motives for executing the trust and transfer instruments and ability to pay the bank's judgment debt was not credible." *Id.* The court based its conclusion on their "testimony, their demeanor, and how their answers to questions related to other evidence at trial." *Id.* The Bankruptcy Court concluded: "[I]t was clear that this testimony was self-serving, evasive, and vague. Both Defendants had an obvious interest in preserving their equity in the Ringwood residence and insulating it from the bank's efforts to collect its debt." *Id.*

The Bankruptcy Court ultimately entered a judgment in favor of Mr. Olsen on Counts I and II of the complaint. *Id.* at 165. The Bankruptcy Court avoided the transfer of Mr. Paulsen's interest in the Ringwood property and disallowed his claim of exemption under 735 ILCS 5/12-112. *Id.* The Bankruptcy Court also entered judgment in favor of Mr. and Mrs. Paulsen as to Count III without prejudice. *Id.*

Because Mr. Olsen had no proposal to buy the Ringwood property, the court found Mr. Olsen's request to sell it under § 363(h) to be premature. *Id.*

The Paulsens now appeal. The Court counts at least eight assignments of error—not including those packed into the Pandora's box of repeated arguments, sub-arguments, and sub-sub-arguments. The Court attempts to address each of the Paulsens' alleged assignments of error in turn. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). At the outset, the Court notes that many of the Paulsens' arguments focus on the Bankruptcy Court's decisions not to dismiss the complaint and not to grant them summary judgment. But the Bankruptcy Court held a full trial after those interlocutory orders, which merged with the judgment after trial. *See In re Denbeste*, Nos. NC-12-1087, NC-12-1180, 2012 Bankr. LEXIS 5207, at *11-12 (B.A.P. 9th Cir. Nov. 6, 2012). So, there is no basis to review these decisions. *Id.* Although the Court addresses the Paulsens' arguments regarding these alleged erroneous rulings, standing alone the merger is sufficient to dismiss these arguments. *Id.*

## STANDARD OF REVIEW

"District courts sit as appellate courts when hearing appeals from bankruptcy courts." *Hijjawi v. Five N. Wabash Condo Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013). A bankruptcy court's factual findings are reviewed for clear error. *Kovacs v. United States*, 793 F.3d 1020, 1023 (7th Cir. 2014). Clear error is an exacting standard of review: a district court will "not reverse a determination for clear error unless it strikes [the court] with the force of a 5 week old, unrefrigerated, dead fish." *S Indus.,*

*Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). If a bankruptcy court's findings of facts are "plausible in light of the record," the district court will not reverse the findings even if the district court "would have decided the case differently." *Carnes Co. v. Stone Creek Mech.*, 412 F.3d 845, 848 (7th Cir. 2005) (quoting *Cent. States, S.E. & S.W. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 910 (7th Cir. 2000)). So, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Blake v. United States*, 814 F.3d 851, 855 (7th Cir. 2016) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

In that vein, this Court gives "great deference" to the Bankruptcy Court's assessment of a witness' credibility. *See Carnes*, 412 F.3d at 848. The Bankruptcy Court "has had the opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, rather than looking at the cold pages [of a transcript]." *Dunning v. Simmons Airlines Inc.*, 62 F.3d 863, 868 (7th Cir. 1995) (alteration in original). After all, a "few minutes of observation of the parties in the courtroom is more informing than reams of cold record." *Ashcraft v. Tennessee*, 322 U.S. 143, 171 (Jackson, J., dissenting). Credibility determinations, therefore, "can virtually never amount to clear error." *Lac Du Flambeau v. Stop Treaty Abuse–Wisc., Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994).

In sum, "it is for the bankruptcy court to assess the credibility of witnesses and weigh evidence, and we will not second guess the court's resolution of conflicting evidence." *Freeland v. Enodis Corp.*, 540 F.3d 721, 734 (7th Cir. 2008).

This Court defers far less to the Bankruptcy Court's legal conclusions and reviews them *de novo. Kovacs*, 793 F.3d at 1023.

The Court notes that Mr. Olsen, now the appellee, failed to file a substantive response to Mr. and Mrs. Paulsen's opening brief. *See* Dkt. 13. Citing concerns over "situations when the cost of recovery efforts may exceed the potential recovery," Mr. Olsen rested on Judge Lynch's "well researched, well reasoned, and thorough" opinion. *Id.* at 2. The Court, therefore, will decide the appeal "solely on the brief of the appellant." *See Acevedo v. SC Real Estate, LLC*, 526 B.R. 761, 764 n.1 (N.D. Ill. 2014) (quoting *Instituto Nacional de Comercializacion Agricola (INDECA) v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1270 (7th Cir. 1988)).

## DISCUSSION

There are few things that the Paulsens believe the Bankruptcy Court got right. The Paulsens argue that the Bankruptcy Court erred in denying their motion to dismiss, erred in denying their motion for summary judgment, and erred in a whole host of ways in its final ruling, both in matters of fact and law.

Each stage of this proceeding turns on the interpretation and application of 735 ILCS 5/12-112. Section 12-112 addresses protecting property held in tenancy in the entirety and the exception to this protection:

> Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment

> entered on or after October 1, against only one of the tenants, except if
> the property was transferred into tenancy by the entirety with the sole
> intent to avoid the payment of debts existing at the time of the transfer
> beyond the transferor's ability to pay those debts as they become due.

735 ILCS 5/12-112. "This section insulates property held in tenancy by the entirety

from forced sale by a judgment creditor of only one of the tenants with one exception

– where the transfer was made with the proscribed sole intent." *In re Stacy*, 227 B.R.

272, 276 (N.D. Ill. 1998).

Thus, the Court reviews the Bankruptcy Court's decisions with an eye towards

(1) Mr. Paulsen's "sole intent," and (2), Mr. Paulsen's ability to pay debts existing at

the time of transfer as they became due. *See* 735 ILCS 5/12-112.

## I.      The Court lacks appellate jurisdiction to review the judgment on Count III of Mr. Olsen's adversarial complaint.

The Court must first determine whether it has appellate jurisdiction. *In re Bowers-Siemon Chems. Co.*, 123 B.R. 821, 822 (N.D. Ill. 1991); *see also Schaumburg Bank & Trust Co., N.A. v. Alsterda*, 815 F.3d 306, 312 (7th Cir. 2016).

Appellate jurisdiction is authorized by 28 U.S.C. § 158(a), which confers jurisdiction to hear appeals "from final judgments, orders, and decrees . . . in cases and proceedings" to the district courts. 28 U.S.C. § 158(a)(1). In bankruptcy cases, "finality" tends to be construed more liberally. *See Schaumburg Bank*, 815 F.3d at 312; 1 *Collier on Bankruptcy* ¶ 5.08[1][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2023). In determining finality, the question is whether the order "disposed of a discrete dispute within a larger case." *Schaumburg Bank*, 815 F.3d at 312. If an order is not literally final, it can still be appealable "if all that remains to be done on remand to make it final is a 'ministerial' ruling by the lower court, *i.e.* a ruling

unlikely to give rise to a controversy that would trigger a further appeal." *Id.* at 313. The judicial unit being analyzed need not be the entire case, just a "separable dispute over a creditor's claim or priority." *Id.* at 313. As a result, the judicial unit for analyzing finality is often the proceeding. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020).

A key part of this analysis is determining what constitutes a "proceeding" for a discrete dispute. *Id.*; *Schaumburg Bank*, 815 F.3d at 312. One way to divide this case into proceedings is by the counts in Mr. Olsen's adversarial complaint: each count has its own demand for relief and addresses a separate legal question. There's no dispute that the judgments on Counts I and II are appealable. Those judgments make clear that Mr. Paulsen's interest in the Ringwood property would be avoided and his claim of exemption under 735 ILCS 5/12-112 disallowed. *Paulsen*, 640 B.R. at 165. The judgment on Count III is the one where appellate jurisdiction is an issue.[3]

For Count III, the Court finds the Supreme Court case *Bullard v. Blue Hills Bank* instructive. In that case, the Supreme Court held that an order denying the confirmation of a Chapter 13 plan was not final. *Bullard*, 575 U.S. 496, 498 (2015). The parties disagreed as to whether the relevant proceeding was the process of arriving at a plan that would allow the bankruptcy to move forward or each proposed plan from the debtor. *Id.* at 502. The Supreme Court went with the former. *Id.* It contrasted how a confirmation of a plan changes the status quo with how a denial of

---

[3] Because the judgment on Count III was without prejudice, which suggests that it was "not an adjudication that concludes all the rights of the [Paulsens]," Dkt. 12 at 47, the Court requested supplemental briefing on the issue of appellate jurisdiction, specifically whether the judgment was a final order. Dkt. 17.

confirmation does not—after a denial of confirmation, "[t]he parties' rights and obligations remain unsettled." *Id.*

In this case, the Bankruptcy Court's judgment does not preclude future proposed sales of the Ringwood property: the judgment was entered "without prejudice to a future action to sell the property." *Paulsen*, 640 B.R. at 165. Unlike *Bullard*, Mr. Olsen had no actual proposal to buy the Ringwood property, making it less of a change in circumstances than the denial of confirmation of a particular plan in *Bullard*. *See Bullard*, 575 U.S. at 502. ("An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a 'final' purchasing decision by either the buyer or seller."). The question of whether the property *could* be sold under § 363(h) appears to be unresolved. *See Schaumburg Bank*, 815 F.3d at 313. The Paulsens' comparison to *In re Hall*, 477 B.R. 74 (Bankr. N.D. Ill. 2012), slices this proceeding too thin: although the judgment in this case came after a full trial, the decision does not fully resolve whether the property can be sold under § 363(h).

The Paulsens argue that the Bankruptcy Court's judgment is a final order because it came after the parties "actively litigated the merits of the Count in a contested trial." Dkt. 18 at 4.[4] According to the Paulsens, the Bankruptcy Court's finding Mr. Olsen's request to be premature was a determination on the merits where

---

[4] The Paulsens do not raise the *Gillespie* doctrine until their reply brief, so the Court will not address that argument. *See James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived.").

Mr. Olsen failed to meet his burden of proof, regardless of the Bankruptcy Court's use of "without prejudice." *Id.*; Dkt. 20 at 3. That, however, does not change the effect of the Bankruptcy Court's order; the Court agrees with Mr. Olsen that the order did not deny any and all proposed sales of the Ringwood property. *See* Dkt. 19 at 2. An order without prejudice can in some cases be a de facto final judgment if "it would be futile for the plaintiff or petitioner to attempt to resolve the issue that caused the district court to dismiss the case." *Carter v. Buegsen*, 10 F.4th 715, 720 (7th Cir. 2021). But that is not the case here: if Mr. Olsen were to bring Count III with an actual proposal for a sale, the Bankruptcy Court would have addressed the § 363(h) question.

The Paulsens see the very fact that the judgment leaves Mr. Olsen "apparently free to try again and again" as a reason that the Court must have appellate jurisdiction. Dkt. 18 at 8. However, this confuses the jurisdictional issue with the merits. The potential burden of relitigation does not change the lack of jurisdiction. *See Bullard*, 575 U.S. at 507. In fact, if the judgment were appealable, the Paulsens would risk even more burdensome litigation, as each subsequent proposed sale and its ensuing appeal would to rack up more costs. *Cf. Bullard*, 575 U.S. at 504 ("[E]ach climb up the appellate ladder and slide down the chute can take more than a year. Avoiding such delays and inefficiencies is precisely the reason for a rule of finality. It does not make much sense to define the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the availability of appellate review.").

The Court finds that it does not have jurisdiction to review the judgment for Count III. The rest of this opinion proceeds in reviewing only judgments related to Counts I and II.

## II. The Bankruptcy Court did not err in denying the Paulsens' motion to dismiss.

The Court reviews *de novo* the Bankruptcy Court's denial of the Paulsens' motion to dismiss. *Armstrong v. Daily*, 786 F.3d 529, 538 (7th Cir. 2015). Again, because the Bankruptcy Court held a full trial after its decision to deny the motion to dismiss, that decision merged with the judgment, thus eliminating any appeal from this ruling. *See Denbeste*, 2012 Bankr. LEXIS 5207, at *11-12. Nevertheless, the Court will address the Paulsens' arguments in this regard.

Federal Rule of Civil Procedure 8, made applicable by Federal Rule of Bankruptcy Procedure 7012, requires that a plaintiff's complaint need only allege a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as a prayer for the relief sought. Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7012. According to the Supreme Court, this means that the complaint's factual allegations, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the complained of misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint's allegations, the Court is typically limited to reviewing the complaint's factual allegations. Factual allegations are taken as true, and inferences from the allegations are construed in favor of the plaintiff. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). The defendant, as the moving

party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

The Paulsens claim that the Bankruptcy Court "inappropriately considered allegations of actual fraud under the Uniform Fraudulent Transfer Act as sufficient to state a cause of action under 735 ILCS 5/12-112 to support the denial of Defendants' motion to dismiss." Dkt. 12 at 13.

Although the Paulsens fail to specify which "allegations of actual fraud" the Bankruptcy Court allegedly inappropriately considered, they appear to suggest that the Bankruptcy Court inappropriately relied on allegations resembling the "badges of fraud" used to find actual intent under the Uniform Fraudulent Transfer Act. 740 ILCS 160/5(b); *In re Ziegler*, 320 B.R. 362, 373 (N.D. Ill. 2005). These badges include whether:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;
>
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

17

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b). As the Paulsens allude, the "badges of fraud" analysis is "not to be used to avoid a transfer" under 735 ILCS 5/12-112. *Premier Prop. Mgmt., Inc. v. Chavez*, 728 N.E.2d 476, 482 (Ill. 2000). The "tenancy by the entirety provision," 735 ILCS 5/12-112, "expressly includes its own standard to be used when a creditor challenges a transfer to that estate." *Id.* at 481. The "sole intent" standard is "substantially different" from the "actual intent" standard in that it "provides greater protections from creditors for transfers of property to tenancy by the entirety." *Id.* at 482. What's more, "if property is transferred to tenancy by the entirety to place it beyond the reach of the creditors of one spouse *and* to accomplish some other legitimate purpose, the transfer is not avoidable." *Id.* Critically, that same transfer "would be avoidable under the actual intent standard, which only requires an actual intent to defraud a creditor." *Id.*

The complaint alleges that the transfer of the Paulsens' interests in the residential property was "made by [Mr. Paulsen] with the sole intent to avoid the payment of debt which existed" at the time of the transfer "which was beyond [Mr. Paulsen's] ability to pay as it became due." Dkt. 12-1 at 13–14. This allegation alone is sufficient to state a plausible claim to relief. *See RBS Citizens, N.A. v. Gammonley*, No. 12 C 8659, 2015 U.S. Dist. LEXIS 2775, at *19–20 (N.D. Ill. Mar. 6, 2015) ("Plaintiff alleges that 'the transfer . . . into a tenancy by the entirety was designed

with the sole intent to avoid any creditors pursuant to 735 ILCS 5/12-112.' . . . This is sufficient to withstand a motion to dismiss.").

But the complaint does not stop there. It also alleges what informed Mr. Olsen's "knowledge and belief" that Mr. Paulsen transferred his interest with the "sole intent to avoid" paying the debt as it became due:

> a. At the time of the transfer the Debtor was indebted to an under secured creditor.
>
> b. The transfer was for less than fair equivalent value, i.e., the Debtor received no consideration of any value for and in exchange of said transfer to the Paulsen Trust.
>
> c. The transfer was to an insider, i.e., the Debtor transferred his ownership interest in the Homestead to the Paulsen Trust – the Debtor and his spouse being both the trustees and beneficiaries of the Paulsen Trust.
>
> d. The transfer rendered the Debtor balance sheet insolvent.
>
> e. At the time of the transfer, the Debtor was not paying his debts as they became due.
>
> f. The transfer was a substantial portion of the Debtor's assets.
>
> g. The Debtor was the subject of pending litigation at the time of the transfer.
>
> h. The Debtor retained counsel which held himself out as specializing in the practice of bankruptcy/asset protection to assist with the Transfer.

*Id.* at 14. To be sure, these allegations are not cabined only to an "actual intent" analysis, which is inapplicable to Mr. Olsen's claims. *See Premier Prop. Mgmt.*, 728 N.E.2d at 482. Rather, they also shed light on Mr. Paulsen's alleged "sole intent" and his ability to pay the debt as it became due. *See* 735 ILCS 5/12-112.

Accordingly, the Bankruptcy Court did not err in denying the Paulsens' motion to dismiss.

19

### III. The Bankruptcy Court did not err in denying the Paulsens' motion for summary judgment.

The Court reviews *de novo* the Bankruptcy Court's denial of summary judgment. *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004).[5] Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, summary judgment should only be granted if there is "no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The Court views all facts and draws all reasonable inferences in favor of the nonmovant. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (internal citation and quotations omitted). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (quoting *Cont'l Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005)).

Summary judgment is "notoriously inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985). Still, summary judgment is proper when "the plaintiff fails to indicate any motive or intent

---

[5] Once again, because the Bankruptcy Court held a trial, the ruling on the summary judgment motion merged with the Bankruptcy Court's judgment, thereby eliminating the ability to appeal this issue. *See Denbeste*, 2012 Bankr. LEXIS 5207, at *11-12.

to support" the plaintiff's contravening position. *Morgan v. Harris Tr. & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989).

According to the Paulsens, "there was nothing submitted" by Mr. Olsen that created a genuine dispute of material fact precluding summary judgment, and "instead[,] the court inappropriately applied multiple negative 'inferences' from the affirmative evidence" presented by the Defendants." Dkt. 12 at 24.

But that's just not the case.

Mr. Olsen highlighted that Mr. Paulsen tried to settle the debt with McHenry Savings Bank for less than the full amount, contravening Mr. Paulsen and Mrs. Paulsen's assertion that on or around the time they transferred their interests to tenancy by the entirety they intended to pay the debt in full. *See* Dkt. 4-3 at 446–47. What's more, Mr. Magee's affidavit notes that before the creation of the trust, Mr. Magee explained to the Paulsens that holding title as tenants by the entirety could "protect their home from a future creditor of one or the other." *Id.* at 466. Further, the parties agree that the Paulsens transferred their interests to the trust just three months after an Illinois state court entered a judgment against them for nearly $350,000. *Id.* at 462 ¶ 12, 469 ¶ 23. Even without taking any inferences, the timing of the transfer alone creates a genuine dispute of material fact as to Mr. Paulsen's "sole intent" at the time of the transfer. But taking all reasonable inferences in favor of the nonmoving party, genuine disputes of material fact abound. *See* Fed. R. Civ. P. 56(a); *Donald*, 982 F.3d at 457.

Turning to Mr. Paulsen's ability to pay the debt as it came due, the Paulsens and Mr. Olsen again paint very different pictures. The Paulsens claim that, at the time of the transfer, Mr. Paulsen had the ability to pay the debt as it became due. First, they claim they made all monthly mortgage payments. Dkt. 4-2 at 146–47. They also claim that they were not in breach of the loan agreement when McHenry Savings Bank filed suit. *Id.* at 147. They add that the loan agreement permitted them not to pay real estate taxes in 2016 and 2017. *See id.* And finally, they claim they had sufficient assets to pay the loan in full, in that as of January 2019, Mr. Paulsen's commercial real estate was worth between $275,000, they had $50,000 worth of business equipment, and Mr. Paulsen could obtain a loan from a friend worth another $50,000. *Id.* at 147–48.

Mr. Olsen, for his part, notes that five days after the Paulsens transferred their interests into tenants by the entirety, Mr. Paulsen tendered a financial statement to the Bank in which he disclosed that he owed the bank $339,505. *See* Dkt. 4-3 at 444. That same financial statement "only disclosed assets consisting of a bank account jointly owned with his wife with a value of $8,500" and the commercial real estate that, although no value was included on the financial statement, Mr. Paulsen later valued on his bankruptcy statement as $275,000. *Id.* The sum of those assets is $56,005 short of the amount owed to the bank. Mr. Olsen also points to Mr. Paulsen's bankruptcy schedule, filed October 29, 2019, as further proof of Mr. Paulsen's inability to pay the debt as it became due. *Id.* The October bankruptcy schedule states that Mr. Paulsen owed the bank $342,000, while "disclosing only nonexempt assets

of the [commercial real estate] which he valued at $275,000 and business equipment which he valued at $50,000." *Id.*

Further, Mr. Olsen also casts doubt on the Paulsens' $275,000 valuation of their commercial real estate. *Id.* According to Mr. Olsen, the "source" of Mr. Paulsen's $275,000 valuation was "apparently the contract executed by Barry Lederer on February 22, 2019," one month after the Paulsens transferred their interests. *Id.* The agreement was contingent on Mr. Lederer securing financing for $220,000. *Id.* at 444–45. But just four months after executing that contract, Mr. Lederer's attorney contacted Mr. Paulsen's attorney explaining that "The lender for our client has indicated that there is no way they can make a loan on this property at the current purchase price. . . . For all of these reasons, the undersigned does hereby declare the contract null and void effective immediately." *Id.* at 445 (omission in original) (emphasis omitted).

Taking all inferences in favor of the nonmoving party—Mr. Olsen—genuine disputes of material fact remained as to Mr. Paulsen's ability to pay the debts as they became due. Accordingly, because genuine disputes of material facts existed as to Mr. Paulsen's sole intent and his ability to pay the debts as they became due, the Bankruptcy Court was correct in denying summary judgment.

## IV. The Bankruptcy Court did not err as a matter of fact or law during trial.

The Paulsens raise a cornucopia of allege by the Bankruptcy Court throughout trial. To the extent the Court can discern the Paulsens arguments, the Court finds all of them unmeritorious. Because the Paulsens divided their arguments into five

different sections (C, D, E, F, and G) the Courts reasoning proceeds one by one through each of them.

    1.  *The arguments in Section C of the Paulsens' opening brief are meritless.*

Lumped together under the Section C heading of the Paulsens' opening brief, the Paulsens claim that the Bankruptcy Court considered facts "on matters irrelevant and immaterial to the statutory standard," failed to consider "evidence of valuation of the collateral for the debt as of the date of transfer," and failed to make findings of fact concerning "the value of assets and financial resources available" to the Paulsens at the time of the transfer. Dkt. 12 at 22–23. They also argue that Mr. Olsen "failed to produce evidence as to the valuation of collateral securing the debt as of the date of transfer" and "evidence that at the time of transfer debts existed beyond the transferor's ability to pay as they came due." *Id.*

But beyond the heading, the Paulsens' argument takes a different form. Section C reads as though the Paulsens take issue with the credibility determinations the Bankruptcy Court made. *Id.* at 22–26. The Paulsens argue that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 24 (citing *Anderson*, 470 U.S. at 573). They go on to clarify that "[t]he point here is that there is no contrary evidence to support [Mr. Olsen's] case, but rather direct, objective material facts supported by documents that the trial court would dismiss in favor for contrary conclusions, inappropriately framed as inferences." *Id.*

According to the Paulsens, the Bankruptcy Court erred in "summarily dismiss[ing]" evidence establishing that Mr. Paulsen had his commercial real estate appraised at $473,000 and the affidavits submitted by Mr. Paulsen and his son confirm that appraisal. *Id.* at 25. They claim that such evidence should have been considered "no matter the feeling of credibility as to the witnesses." *Id.* They go on to suggest that the Bankruptcy Court's findings of fact "do not include several very significant, undisputed facts, and do include several misunderstood facts." *Id.* They then cite several portions of the trial's transcript, arguing that the "totality of those findings indicates significant activity toward and ability and intent to pay off the bank debt."

The Bankruptcy Court explained that it "received over three dozen exhibits, heard the testimony of James and Kathleen Paulsen, their son Daniel Paulsen, and their attorney James Magee, as well as the testimony of the Trustee Joseph Olsen." *Paulsen*, 640 B.R. at 151. The Bankruptcy Court heard the evidence that the Paulsens claim was not considered, and it found the evidence not credible. *Id.* What's more, the Paulsens do not identify any specific findings of fact that the Bankruptcy Court made in error. Rather, their argument seems to be that the Bankruptcy Court should have weighed certain evidence more favorably.

This Court will not reweigh the evidence presented before the Bankruptcy Court. *See Carnes*, 412 F.3d at 848. It is squarely within the province of the Bankruptcy Court to weigh evidence, and if the "account of the evidence is plausible in light of the record viewed in the entirety," this Court won't reverse those factual

findings, even if it would have weighed the evidence differently. *Freeland*, 540 F.3d at 729, 734. "When there are two permissible views of the evidence, the . . . choice between them cannot be clearly erroneous." *Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010). After reviewing the record, the Court is not "left with the definite and firm conviction that a mistake has been committed" with respect to the Bankruptcy Court's findings of fact. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Indeed, the Bankruptcy Court's findings of fact are supported by evidence in the record. The Paulsens have also failed to show that the Bankruptcy Court's credibility determinations were clear error. *Lac Du Flambeau*, 41 F.3d at 1194.

Thus, the arguments included in Section C are meritless.

2. *The arguments in Section D of the Paulsens' opening brief are meritless.*

Under Section D, the Paulsens first ask whether "to prove sole intent," Mr. Olsen must "negate any other intent or purpose." Dkt. 12 at 27. The Paulsens only cite authority explaining that the "sole intent" standard is demanding. *See id.* at 30–31. They cite no authority that suggests that Mr. Olsen is required to "negate other legitimate purposes." *Id.* Thus, this argument will not be considered. *See Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000) ("Even if this argument made sense, [the plaintiff] cited no authority for this proposition and devoted less than one sentence in the brief to it. Therefore, it is deemed waived."); *Am. Fam. Mut. Ins. v. Roth*, 2007 U.S. Dist. LEXIS 60935, at *4–5 (N.D. Ill. Aug. 16, 2007) (collecting cases); *McWilliams v. McWilliams*, 2006 U.S. Dist. LEXIS 92318, at *3–4 (N.D. Ill. Dec. 19, 2006) (collecting cases). Second, they ask whether the statute allows "rejection of other legitimate purposes as unworthy." Dkt. 12 at 27. Third, they ask if "the amount

of unsecured debt" is a "factor in considering the ability to pay debt." *Id.* And fourth, they ask if the burden of proof is clear and convincing evidence, rather than a preponderance of the evidence. *See id.*

As to the second question, the Paulsens argue "[i]f both [spouses] are transferors . . . , the standard of sole intent should apply to both." *Id.* at 29. They continue by arguing that "with there being no stipulation as to sole intent, for the trial court here to infer sole intent was clearly unreasonable and freed [Mr. Olsen] from being required to prove anything." *Id.* at 30. According to them, "to have proof of sole intent, logic requires the objecting party to negate other legitimate purposes." *Id.* The Paulsens also chastise the Bankruptcy Court's credibility determinations: "Can the court deem frivolous and disregard a stated purpose such as estate planning or confirmation of the need for joint action by spouses, or avoidance of probate, or protection from future creditors?" *Id.* at 33.

The statute is unambiguous and Illinois law is clear that "the 'sole intent' standard in section 12-112 applies to the debtor, not the debtor's spouse." *La Salle Bank, N.A. v. DeCarlo*, 783 N.E.2d 211, 285 (Ill. Ct. App. 2003).

What's more, it is entirely unsurprising that there is no "stipulation as to sole intent." The "sole intent" inquiry is the whole shebang. *See* 735 ILCS 5/12-112. Additionally, the Bankruptcy Court did not improperly "infer" Mr. Paulsen's "sole intent," or improperly reject "other legitimate purposes as unworthy." Rather, the Bankruptcy Court relied on circumstantial evidence including the timing of the transfer, the Paulsens' financial condition, and the Paulsens' credibility and stated

reasons for the transfer. *See Paulsen*, 640 B.R. at 157–62. And there's nothing wrong with relying on circumstantial evidence. *Hollis v. Ceva Logistics U.S., Inc*, 603 F. Supp. 3d 611, 623 (N.D. Ill. 2022). Direct evidence of intent—particularly fraudulent intent—is rare. *United States v. Filer*, 56 F.4th 421, 435 (7th Cir. 2022); *United States v. Britoon*, 289 F.3d 976, 981 (7th Cir. 2002). Using circumstantial evidence, the Bankruptcy Court reasoned that the Paulsens' stated reasons for the transfer, including the general desire to avoid probate and protect their house in case of "a car accident or something" lacked "credible support," and were "little more than after-the-fact concoctions to avoid the 'sole intent' exclusion." *Id.* at 160. Again, this Court will not reweigh the evidence or discredit the Bankruptcy Court's credibility determinations. *See Freeland*, 540 F.3d at 734; *Carnes*, 412 F.3d at 848.

Turning to the third question, the Paulsens are essentially arguing that the Bankruptcy Court should have weighed evidence supporting their theory of the case over evidence supporting Mr. Olsen's theory of the case. They simply state that the facts supporting their theory are "uncontroverted facts and not matters of weight, demeanor or credibility," and "findings to the contrary are clearly erroneous." Dkt. 12 at 35. But again, the Paulsens do not identify why the facts the Bankruptcy Court made in favor of Mr. Olsen are clearly erroneous. And regardless of how the Paulsens cast their argument, they are again challenging the Bankruptcy Court's assignments of weight, demeanor, and credibility. So, again, the Court declines the invitation to disturb the Bankruptcy Court's rulings. *See Freeland*, 540 F.3d at 734; *Carnes*, 412 F.3d at 848.

Finally, with respect to the burden of proof, the Paulsens recognize that "the burden of proof is generally stated as preponderance of the evidence" but reason that "courts have also recognized that the standard of the statute presents a unique and special burden not easily met" and that "[w]hatever the burden, it is for the contesting party to carry." Dkt. 12 at 27. Beyond that, they present no argument for why the burden should be clear and convincing. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). What's more, the Seventh Circuit counsels against using the clear and convincing burden of proof standard absent specific statutory or rule text or a constitutional requirement. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777-79 (7th Cir. 2016). Thus, the Court will not entertain this argument. *See id.*

### 3. The arguments in Section E of the Paulsens' opening brief are meritless.

The Paulsens claim that the Bankruptcy Court erred in its application of 735 ILCS 5/12-112. Dkt. 12 at 36. They claim that the ability to pay analysis is subjective, rather than objective, and, according to them, because Mr. Paulsen believed he had the ability to pay the debt as it became due, Mr. Olsen failed to meet his burden. *Id.* They also claim that even if it were an objective test, Mr. Olsen still failed to meet his burden. *Id.* at 40.

The Paulsens present no clear authority suggesting that a subjective rather than objective analysis should be used in scrutinizing a debtor's ability to pay. The case they rely on, *In re Werner*, 410 B.R. 797 (Bankr. N.D. Ill. 2009), is inapposite. Without any analysis, the Paulsens include:

As stated by the court in *Werner*:

> With the benefit of hindsight, we know that Werner's belief in the value of the real estate and storage facilities owned by the LLCs was incorrect. But the court must consider Werner's state of mind at the time of the transfer, on January 23, 2003. He believed the debt to Harris Bank could be paid without resorting to a sale of the Real Property.

Dkt. 12 at 41 (quoting *Werner*, 410 B.R. at 806).

But their reliance on *Werner* to suggest that the debtor's state of mind is relevant to the ability to pay analysis is misplaced. The court in *Werner* discusses the debtor's subjective beliefs in the context of evaluating his "sole intent" at the time of the transfer, not his ability to pay. *See Werner*, 410 B.R. at 812. This makes sense.

With respect to the "sole intent" analysis, the Paulsens acknowledge that the Bankruptcy Court based its findings on:

> the timing of the transfer occurring after suit was filed; that the suggestion to transfer came from their attorney[;] that the trust and conveyance documents were signed a week and a half after first meeting with their attorney[;] that [Mr. Paulsen] (1) "understood that protecting the marital home from the debts of one spouse was one of the features of tenancy by the entirety," (2) had as his one and only liability the debt to McHenry Savings Bank "with an approximate balance of $350,000" and (3) knew that his wife was "probably" not liable on the bank note but he was.

Dkt. 12 at 38–39 (citations omitted) (quoting *Paulsen*, 640 B.R. at 158). As for the "ability to pay" analysis, the Paulsens point to the fact that the Bankruptcy Court

> acknowledges the [Paulsens'] contention that on January 19, 2019[, Mr. Paulsen] subjectively believed that he had the ability to pay the McHenry Bank from available resources other than his residence; that the [Paulsens] "…principally rely on their assertion that Mr. Lederer, a friend and former employee of the Paulsens, had agreed to purchase the commercial real estate securing the McHenry Savings Bank loan for $275,000 and had agreed to lend them up to an additional $53,000."; and that [Mr. Paulsen] believed the remaining commercial equipment had a value of $50,000.

*Id.* at 39 (citations omitted) (quoting *Paulsen*, 640 B.R. at 158). The Paulsens proceed to take issue with the Bankruptcy Court's conclusion that "[t]he evidence shows these claims to be unsupported, if not purely fanciful." *Id.* (citations omitted) (quoting *Paulsen*, 640 B.R. at 158). They claim that "[t]here was no impeachment as to the [Paulsens'] evidence," no objection to the testimony offered by Mr. Paulsen and his son "as to valuations of the business real estate and business equipment, and that Mr. Paulsen and his son offered "very detailed affidavits . . . confirming the valuation of the business assets" to which "no contrary evidence" was offered by Mr. Olsen. *Id.* The Paulsens, however, neither mention the Bankruptcy Court's detailed analysis concerning Mr. Paulsen's ability to pay, nor take issue with the findings of fact therein. *See id.* at 36–42. Instead, their argument, once again, is that the Bankruptcy Court should have weighed favorable evidence over harmful evidence favorable evidence. The Court will not second-guess the Bankruptcy Court's credibility determinations or reweigh the evidence. *See Carnes*, 412 F.3d at 848. Thus, the Paulsens' arguments in Section E are meritless.

> *4. The arguments in Section F of the Paulsens' opening brief are meritless.*

The Paulsens, once again, take issue with the Bankruptcy Court's findings of fact. First, they claim there "was no evidence presented" by Mr. Olsen as to Mr. Paulsen's "ability to pay except as stated by [Mr. Paulsen]." Dkt. 12 at 44. They go on to argue that because "[n]o expert was presented; no one from McHenry Savings Bank was called; and no contrary proof negating [Mr. Paulsen's] ability to pay" was presented, the Bankruptcy Court erred in finding that Mr. Paulsen lacked the ability to pay the debt as it became due. *Id.* The Paulsens, once again, rehash the facts

favorable to their case, while glossing over those that harm them—including the Bankruptcy Court's credibility determinations. It should be no surprise that, again, the Court declines to reweigh the evidence and dispute the Bankruptcy Court's credibility determinations. *See Carnes*, 412 F.3d at 848. Thus, the Paulsens' arguments in Section F are meritless.

> 5. *The Court lacks jurisdiction for the arguments in Section G of the Paulsens' opening brief.*

In their final subsection, the Paulsens claim that the Bankruptcy Court erred in entering a judgment without prejudice on Count III. Dkt. 12 at 47–48. As discussed above, the Court lacks appellate jurisdiction to review the judgment.

## CONCLUSION

The Paulsens may not have liked the outcome of the Bankruptcy Court's judgment, but they fail to show that the court erred as a matter of fact or law. This appeal is dismissed for lack of jurisdiction as to the Bankruptcy Court's judgment on Count III of Mr. Olsen's adversarial complaint, and the judgment is affirmed as to Counts I and II of the complaint.

Date: November 20, 2023

_____
Honorable Iain D. Johnston
United States District Judge